Alison Chase (226976)
KELLER ROHRBACK L.L.P.
801 Garden Street, Suite 301
Santa Barbara, CA 93101
(805) 456-1496, Fax (805) 456-1497
achase@kellerrohrback.com

T. David Copley
Gretchen Freeman Cappio, *pro hac vice forthcoming*
Cari Campen Laufenberg, *pro hac vice forthcoming*
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101
(206) 623-1900, Fax (206) 623-3384
dcopley@kellerrohrback.com
gcappio@kellerrohrback.com
claufenberg@kellerrohrback.com

***Attorneys for Plaintiffs***
***Additional Attorneys Listed on Signature Page***

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

MIKAEL YOUNG, individually and on behalf of all others similarly situated;

Plaintiffs,

v.

INTEL CORPORATION, a Delaware corporation;

Defendant.

No. 5:18-cv-00633

**CLASS ACTION COMPLAINT**

DEMAND FOR JURY TRIAL

## Table of Contents

I. INTRODUCTION ........ 2
II. THE PARTIES ........ 3
III. JURISDICTION AND VENUE ........ 4
IV. FACTUAL ALLEGATIONS ........ 4
A. The Intel CPU Defect ........ 4
B. Intel Admits the Defect Exists and Fails to Provide a Remedy ........ 7
V. CLASS ACTION ALLEGATIONS ........ 8
COUNT I - Breach of Implied Warranty ........ 11
COUNT II - Violation of the Magnuson-Moss Warranty Act ........ 13
COUNT III - Virginia Consumer Protection Act, Va. Code Ann. § 59.1-196, et seq. ........ 13
COUNT IV - Consumers Legal Remedies Act, Cal. Civ. Code § 1750 et seq. ........ 15
COUNT V - California Unfair Competition Law ........ 16
COUNT VI - Assumpsit, Restitution, Unjust Enrichment and/or Quasi-Contract ........ 18
COUNT VII - Strict Liability ........ 20
COUNT VIII - Negligence ........ 20
VI. PRAYER FOR RELIEF ........ 21
VII. DEMAND FOR JURY TRIAL ........ 21

Plaintiff Mikael Young, individually and on behalf of all others similarly situated ("Plaintiffs"), by their undersigned counsel, allege the following upon personal knowledge as to their own acts and upon information and belief as to all other matters.

## I. INTRODUCTION

1. Plaintiffs bring this action against defendant Intel Corporation ("Intel" or "Defendant") on behalf of all persons who purchased a defective Intel core processor ("CPU").

2. Defendant Intel's x86-64x CPUs suffer from a security defect that exposes the CPUs to troubling security vulnerabilities by allowing potential access to extremely sensitive kernel data and program data (the "Defect"). The only way to "patch" these vulnerabilities requires extensive changes to the root levels of the Operating System which dramatically reduces CPU performance, and does not fully address the vulnerabilities. The Defect renders the Intel x86-64x CPUs unfit for their intended use and purpose. The Defect exists in all Intel x86-64x CPUs manufactured since at least 2008. The x86-64x CPU is, and was, utilized in the majority of all desktop, laptop computers, and servers in the United States.

3. To date, Defendant has been unable or unwilling to repair the Defect or offer Plaintiffs and Class members a non-defective Intel CPU or reimbursement for the cost of such CPU and the consequential damages arising from the purchase and use of such CPUs. Indeed, there does not appear to be a true "fix" for the Defect. The security "patch," while expected to cure some of the security vulnerabilities, will dramatically degrade the CPU's performance. Therefore, the only "fix" would be to exchange the defective x86-64x processor with a device containing a processor not subject to this security vulnerability. In essence, Intel x86-64x CPU owners are left with the unappealing choice of either purchasing a new computer containing a CPU that does not contain the Defect, or continuing to use a computer with massive security vulnerabilities or one with significant performance degradation.

4. The CPUs Defendant manufactured and sold to Plaintiffs and Class members were not merchantable and were not fit for the ordinary and particular purposes for which such goods are used in that the CPUs suffer from a critical security defect, requiring software patches that will degrade the performance of the CPU.

5. Having purchased a CPU that suffers from this Defect, Plaintiffs and Class members suffered injury in fact and a loss of money or property as a result of Defendant's conduct in designing, manufacturing, distributing, and selling defective CPUs. Intel has failed to remedy this harm, and has earned and continues to earn substantial profit from selling defective CPUs.

## II. THE PARTIES

6. Plaintiff Mikael Young ("Young") is a resident of Norfolk, Virginia. On October 28, 2017, Young purchased an Intel Core i7-7700k Quad-Core 4.2 GHz desktop processor for $318.69 from Outlet PC. He used the Intel 7700k to build a custom computer that is now affected by the Defect. Young researched the different CPUs on the market to determine the best CPU on the market for his needs. Young paid a premium price for the Intel 7700k because he believed it to be of high quality. Young would not have purchased this defective Intel CPU, or would not have paid the price he paid, but for Intel's failure to disclose the existence of the Defect.

7. Defendant Intel Corporation is a business incorporated under the laws of the State of Delaware. Defendant's principal place of business is located at 2200 Mission College Blvd., Santa Clara, California. At all relevant times, Defendant was engaged in the business of designing, manufacturing, distributing and/or selling electronic computer products, including the defective Intel CPUs at issue.

8. Whenever this complaint refers to any act of Defendant, the reference shall mean (1) the acts of the directors, officers, employees, affiliates, or agents of Defendant who authorized such acts while actively engaged in the management, direction, or control of the affairs of Defendant, or at the direction of Defendant, and/or (2) any persons who are the parents or alter egos of Defendant, while acting within the scope of their agency, affiliation, or employment.

## III. JURISDICTION AND VENUE

9. The court has jurisdiction over the lawsuit under 28 U.S.C. § 1332(d), the Class Action Fairness Act, because this suit is a class action, the parties are diverse, and the amount in controversy exceeds $5 million, excluding interest and costs.

10. Venue is proper in this District under 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to this claim occurred in this district.

11. Assignment to the San Jose Division of this District is proper under Northern District of California Civil Local Rule 3-2(c) because a substantial part of the events or omissions which give rise to Plaintiff's claims occurred within the District and Defendant's principal place of business is located in Santa Clara, California. Pursuant to Northern District of California Civil Local Rule 3-2(e), all civil actions which arise in the Santa Clara County shall be assigned to the San Jose Division.

## IV. FACTUAL ALLEGATIONS

12. For at least 10 years, Defendant has marketed, distributed, and warranted these defective Intel CPUs in Virginia, California, and throughout the United States.

13. On or about January 2, 2018, the technical press reported on the existence of a design defect in almost every Intel processor made since 2004 or earlier. The affected Intel x86-64x processors are the most widely-used CPUs in desktop and laptop computers, as well as in servers, including servers relied on by large cloud services providers, such as Amazon, Microsoft, and Google.

14. Also, on or about January 2, 2018, it was revealed that the "patch" to one of the security vulnerabilities would lead to substantial CPU performance degradation. The "patch" would require root level changes to the Operating System resulting in a substantial decrease in CPU performance of as much as 30%.

### A. The Intel CPU Defect

15. Intel's x86-64x CPUs have a Defect that is inherent within the CPU itself and/or the result of software or hardware design or manufacturing flaws. Fixing the Defect using an OS-level software patch causes the CPUs to slow down.

16. As *The Register* reported on January 2, 2018:

> A fundamental design flaw in Intel's processor chips has forced a significant redesign of the Linux and Windows kernels to defang the chip-level security bug.
>
> Programmers are scrambling to overhaul the open-source Linux kernel's virtual memory system. Meanwhile, Microsoft is expected to publicly introduce the necessary changes to its Windows operating system in an upcoming Patch Tuesday: these changes were seeded to beta testers running fast-ring Windows Insider builds in November and December.
>
> Crucially, these updates to both Linux and Windows will incur a performance hit on Intel products. The effects are still being benchmarked, however we're looking at ***a ballpark figure of five to 30 per cent slow down***, depending on the task and the processor model. More recent Intel chips have features – such as PCID – to reduce the performance hit. [...] (emphasis added)
>
> Similar operating systems, such as Apple's 64-bit macOS, will also need to be updated – the flaw is in the Intel x86-64 hardware, and it appears a microcode update can't address it. ***It has to be fixed in software at the OS level, or go buy a new processor without the design blunder.*** (emphasis added)
>
> Details of the vulnerability within Intel's silicon are under wraps: an embargo on the specifics is due to lift early this month, perhaps in time for Microsoft's Patch Tuesday next week. Indeed, patches for the Linux kernel are available for all to see but comments in the source code have been redacted to obfuscate the issue.

*See* https://www.theregister.co.uk/2018/01/02/intel_cpu_design_flaw/ (last visited January 2, 2018).

17. Subsequent reporting by *The Register* revealed that Apple has already provided a software patch for the defect: "Finally, macOS has been patched to counter the chip design blunder since version 10.13.3, according to operating system kernel expert Alex Ionescu." (*Id.*)

18. The Defect's presence is material because ameliorating the Defect reduces the performance of the CPUs thereby causing the CPUs to slow down from the performance specifications that Defendant promised and that consumers expected when buying a computer with an Intel CPU. The Defect is also material because of the security vulnerabilities Intel based CPUs are exposed to.

19. As *The Register* article further explains:

> **Impact**
>
> It is understood the bug is present in modern Intel processors produced in the past decade. It allows normal user programs – from database applications to JavaScript in web browsers – to discern to some extent the layout or contents of protected kernel memory areas.
>
> The fix is to separate the kernel's memory completely from user processes using what's called Kernel Page Table Isolation, or KPTI. [...]
>
> Whenever a running program needs to do anything useful – such as write to a file or open a network connection – it has to temporarily hand control of the processor to the kernel to carry out the job. To make the transition from user mode to kernel mode and back to user mode as fast and efficient as possible, the kernel is present in all processes' virtual memory address spaces, although it is invisible to these programs. When the kernel is needed, the program makes a system call, the processor switches to kernel mode and enters the kernel. When it is done, the CPU is told to switch back to user mode, and reenter the process. While in user mode, the kernel's code and data remains out of sight but present in the process's page tables. [...]
>
> These KPTI patches move the kernel into a completely separate address space, so it's not just invisible to a running process, it's not even there at all. Really, this shouldn't be needed, but clearly there is a flaw in Intel's silicon that allows kernel access protections to be bypassed in some way.
>
> The downside to this separation is that it is relatively expensive, time wise, to keep switching between two separate address spaces for every system call and for every interrupt from the hardware. These context switches do not happen instantly, and they force the processor to dump cached data and reload information from memory. ***This increases the kernel's overhead, and slows down the computer.***
>
> ***Your Intel-powered machine will run slower as a result.***

(*Id.* (emphases added).)

20. In an effort to run as quickly as possible, Intel processors run something called "speculative execution." In essence, the processor attempts to guess what operation is going to be run next so that code can be standing by, ready to execute. When the processor selects what it

believes is the next operation, it will fetch the code(s) needed to carry out that operation and have the code(s) on standby. However, Intel's "speculative execute" code may "fetch" secure codes without first performing a security check which would block such a request. So an unprivileged user program, or even JavaScript running in a web browser, could be used to gain access to sensitive kernel and program data, including passwords. As the *The Register* writes, "[t]hat would allow ring-3-level user code to read ring-0-level kernel data. And that is not good." *Id.*

21. The Defect is material because neither Plaintiffs, Class members, nor any reasonable consumer would have purchased the defective Intel CPUs at the prices that they did had they known or had they been told by Intel or its retail agents about the Defect prior to purchase.

22. The Defect is unprecedented in scope in that it exposes millions and millions of Intel-based computers to critical security vulnerabilities and hacking and the "patch" to cure these security vulnerabilities results in substantial performance degradation.

**B. Intel Admits the Defect Exists and Fails to Provide a Remedy**

23. Intel is aware that its CPUs suffer from the Defect that exposes the CPUs to critical security vulnerabilities and that proposed OS-level software patches will slow the performance of these CPU chips and are not completely effective to protect against the vulnerabilities.

24. On January 3, 2018, Intel issued a press release in response to the myriad news media reports concerning the Defect, stating:

> Intel Responds to Security Research Findings:
>
> Intel and other technology companies have been made aware of new security research describing software analysis methods that, when used for malicious purposes, have the potential to improperly gather sensitive data from computing devices that are operating as designed. Intel believes these exploits do not have the potential to corrupt, modify or delete data.
>
> Recent reports that these exploits are caused by a "bug" or a "flaw" and are unique to Intel products are incorrect. Based on the analysis to date, many types of computing devices — with many different

> vendors' processors and operating systems — are susceptible to these exploits.
>
> Intel is committed to product and customer security and is working closely with many other technology companies, including AMD, ARM Holdings and several operating system vendors, to develop an industry-wide approach to resolve this issue promptly and constructively. Intel has begun providing software and firmware updates to mitigate these exploits. Contrary to some reports, any performance impacts are workload-dependent, and, for the average computer user, should not be significant and will be mitigated over time.
>
> Intel is committed to the industry best practice of responsible disclosure of potential security issues, which is why Intel and other vendors had planned to disclose this issue next week when more software and firmware updates will be available. However, Intel is making this statement today because of the current inaccurate media reports.
>
> Check with your operating system vendor or system manufacturer and apply any available updates as soon as they are available. Following good security practices that protect against malware in general will also help protect against possible exploitation until updates can be applied.
>
> Intel believes its products are the most secure in the world and that, with the support of its partners, the current solutions to this issue provide the best possible security for its customers.[1]

25. Defendant's press release acknowledges the existence of the Defect, claims other vendors (competitors) products also suffer from this Defect, and downplays the performance impact which it asserts "will be mitigated over time." *Id.*

26. Intel has failed to cure the Defect or replace Plaintiffs' Intel CPUs with non-defective CPUs and offer full compensation required under federal and state law.

## V. CLASS ACTION ALLEGATIONS

27. Plaintiffs bring this class action claim pursuant to Rule 23 of the Federal Rules of Civil Procedure. The requirements of Rule 23 are met with respect to the class defined below.

28. Plaintiffs bring their claims on their own behalf, and on behalf of the following class (the "Class"):

---

[1] https://newsroom.intel.com/news/intel-responds-to-security-research-findings/

> All individuals or entities who purchased one or more Intel CPUs with the Defects from Intel or its authorized retailer sellers or as part of an original equipment manufacturer system. Excluded from the Class are Defendant, its officers and directors at all relevant times, members of immediate families and their legal representatives, heirs, successors, or assigns and any entity in which the Defendant had a controlling interest.

29. Plaintiffs reserve the right to amend or modify the Class definition in connection with a motion for class certification and/or the result of discovery. This lawsuit is properly brought as a class action for the following reasons.

30. The Class is so numerous that joinder of the individual members of the proposed Class is impracticable. The Class includes thousands of persons geographically dispersed throughout the United States. The precise number and identities of Class members are unknown to Plaintiffs, but are known to Defendant or can be ascertained through discovery, using records of sales, warranty records, and other information kept by Defendant or its agents.

31. Plaintiffs do not anticipate any difficulties in the management of this action as a class action. There is a well-defined community of interest in the questions of law and/or fact alleged herein since the rights of each Class member were infringed or violated in similar fashion based upon Defendant's uniform misconduct. Notice can be provided through sales and warranty records and publication.

32. Questions of law or fact common to the Class exist as to Plaintiffs and all Class members, and these common questions predominate over any questions affecting only individual members of the Class. Among these predominant common questions of law and/or fact are the following:

a. Whether Defendant engaged in the conduct alleged herein;

b. Whether Defendant's processors are defective and contain the Defect;

c. Whether the purported "patches," "fixes," or other remedies are ineffective and/or result in reduced processing performance;

d. Whether Defendant knew, or should have known, that its processors were defective and that, if mitigated, resulted in reduced processing performance;

e. Whether Defendant had a duty to disclose, and breached its duty to disclose, that its processors were defective and that, if mitigated, resulted in reduced processing performance;

f. Whether Defendant intentionally, recklessly, or negligently misrepresented or omitted material facts including the fact that its processors are defective and that, if mitigated, resulted in reduced processing performance;

g. Whether Defendant breached its implied warranties in that its processors were defective with respect to manufacture, workmanship, and/or design;

h. Whether Defendant violated the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 et seq.;

i. Whether Defendant was unjustly enriched by the conduct alleged herein;

j. Whether Defendant violated California's Consumers Legal Remedies Act, California Civil Code § 1750 et seq.;

k. Whether Defendant violated California's Unfair Competition Law, California Business & Professions Code § 17200 et seq.;

l. Whether Plaintiff and members of the Class overpaid for AMD Processors;

m. Whether Plaintiff and members of the Class are entitled to equitable relief, including, but not limited to, restitution or injunctive relief; and

n. Whether Plaintiff and members of the Class are entitled to damages and other monetary relief and, if so, in what amount.

33. Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiffs and the Class. Individual questions, if any, pale by comparison to the numerous common questions that predominate.

34. Plaintiffs' claims are typical of the claims of Class members. The injuries sustained by Plaintiffs and the Class flow, in each instance, from a common nucleus of operative facts based on the Defendant's uniform conduct as set forth above. The defenses, if any, that will be asserted against Plaintiffs' claims likely will be similar to the defenses that will be asserted, if any, against Class members' claims.

35. Plaintiffs will fairly and adequately protect the interests of Class members. Plaintiffs have no interests materially adverse to or that irreconcilably conflict with the interests of Class members and have retained counsel with significant experience in handling class actions and other complex litigation, and who will vigorously prosecute this action.

36. A class action is superior to other available methods for the fair and efficient group-wide adjudication of this controversy, and individual joinder of all Class members is impracticable, if not impossible because a large number of Class members are located throughout the United States. Moreover, the cost to the court system of such individualized litigation would be substantial. Individualized litigation would likewise present the potential for inconsistent or contradictory judgments and would result in significant delay and expense to all parties and multiple courts hearing virtually identical lawsuits. By contrast, the conduct of this action as a class action presents fewer management difficulties, conserves the resources of the parties and the courts, protects the rights of each Class member and maximizes recovery to them.

37. Defendant has acted on grounds generally applicable to the entire Class, thereby making final injunctive relief or corresponding declaratory relief appropriate with respect to the Class as a whole.

**COUNT I**
**Breach of Implied Warranty**

38. Plaintiffs hereby incorporate all the above allegations by reference as if fully set forth herein. Plaintiffs assert this count individually and on behalf of the proposed Class.

39. Defendant and its authorized agents and resellers sold Intel CPUs to Plaintiffs and Class members in the regular course of business.

40. Defendant impliedly warranted to members of the general public, including Plaintiffs and Class members, these CPUs were of merchantable quality (*i.e.*, a product of a high enough quality to make it fit for sale, usable for the purpose it is made, of average worth in the marketplace, or not broken, unworkable, damaged, contaminated or flawed), was of the same quality as those generally acceptable in the trade or that would pass without objection in the

trade, were free from material defects and were reasonably fit for the ordinary purposes for which they were intended or used. In addition, Defendant either was or should have been aware of the particular purposes for which such CPUs are used, and that Plaintiffs and the Class members were relying on the skill and judgment of Defendant to furnish suitable goods for such purpose.

41. Plaintiffs and Class members purchased their defective Intel CPUs from authorized retailers and authorized CPU service facilities pursuant to agreements between Defendant and its authorized agents and re-sellers. Plaintiffs and Class members are third-party beneficiaries of, and substantially benefited from, such contracts.

42. Defendant breached its implied warranties by selling Plaintiffs and Class members defective Intel CPUs. The Defect renders the Intel CPUs unmerchantable and unfit for their ordinary or particular use or purpose. Defendant has refused to recall, repair or replace, free of charge, all Intel CPUs or any of their defective component parts or refund the prices paid for such CPUs.

43. The Defect in the Intel CPUs existed when the CPUs left Defendant's and their authorized agents' and retail sellers' possession and thus is inherent in such CPUs.

44. As a direct and proximate result of Defendant's breach of its implied warranties, Plaintiffs and Class members have suffered damages and continue to suffer damages, including economic damages at the point of sale in terms of the difference between the value of the CPUs as warranted and the value of the CPUs as delivered. Additionally, Plaintiffs and Class members either have or will incur economic, incidental and consequential damages in the cost of repair or replacement and costs of complying with continued contractual obligations as well as the cost of buying an additional CPU they would not have purchased had the CPUs in question not contained the non-repairable Defect.

45. Plaintiffs and Class members are entitled to legal and equitable relief against Defendant, including damages, specific performance, rescission, attorneys' fees, costs of suit, and other relief as appropriate.

**COUNT II**
**Violation of the Magnuson-Moss Warranty Act**

46. Plaintiffs incorporate all of the above allegations by reference as if fully set forth herein. Plaintiffs assert this claim individually and on behalf of all Class members.

47. The Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 et seq., provides a federal remedy for consumers who have been damaged by the failure of a supplier or warrantor to comply with any obligation under a written warranty or implied warranty, or other various obligations.

48. An implied warranty of merchantability arose in connection with the purchases of the Intel CPUs by Plaintiffs by operation of state law under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(7).

49. The Intel CPUs are a "consumer product" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

50. Plaintiffs and other members of the Class are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

51. Defendant is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301(4) & 2301(5).

52. Defendant breached its implied warranty of merchantability by selling Plaintiffs and Class members defective Intel CPUs and thereby violated the Magnuson-Moss Warranty Act.

53. Consequently, Plaintiffs and the other members of the Class have suffered injury and are entitled to damages in an amount to be proven at trial, along with attorney's fees and costs.

**COUNT III**
**Virginia Consumer Protection Act, Va. Code Ann. § 59.1-196, et seq.**

54. Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

55. This count is brought on behalf of Class members residing in Virginia.

56. Plaintiff and Defendant are "persons" within the meaning of Va. Code Ann. § 59.1-198.

57. Defendant is a "supplier" within the meaning of Va. Code Ann. § 59.1-198.

58. The Virginia Consumer Protection Act ("Virginia CPA") makes unlawful "fraudulent acts or practices." Va. Code Ann. § 59.1-200(A).

59. In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the Virginia CPA as detailed above. Specifically, Defendant developed and sold Defective CPUs and failed to disclose known defects in the CPUs. Defendant engaged in one or more of the following unfair or deceptive acts or practices as defined in Va. Code Ann. § 59.1-200(A):

A. Representing that the CPUs had characteristics, uses, or benefits that they do not have;

B. Representing that the CPUs are of a particular standard, quality and grade when they are not; and/or

C. Advertising the CPUs with the intent not to sell or lease them as advertised.

60. Defendant's failure to disclose defects in the CPUs was material to Plaintiff and other class members residing in Virginia, as Defendants intended. Had they known the truth, Plaintiff and other class members residing in Virginia would not have purchased the CPUs or would have paid significantly less money to buy the defective products.

61. Plaintiff and other class members residing in Virginia had no way of discerning that Defendant's representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose, because the Defect is highly technical and hard for a non-expert to identify and measure. Plaintiff and other class members residing in Virginia did not, and could not, unravel Defendant's deception on their own.

62. Defendant had an ongoing duty to Plaintiff and other class members residing in Virginia to refrain from unfair and deceptive practices under the Virginia CPA in the course of their business. Specifically, Defendants owed Virginia State Class members a duty to disclose

all the material facts concerning the CPUs because they possessed exclusive knowledge, they intentionally concealed it from the Virginia State Class, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

63. Plaintiff and other class members residing in Virginia suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's conduct.

64. Defendant's violations present a continuing risk to Plaintiff and other class members residing in Virginia, as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

65. Pursuant to Va. Code Ann. § 59.1-204(A)–(B), Plaintiff and other class members residing in Virginia seek an order enjoining Defendant's unfair and/or deceptive acts or practices, and awarding damages, punitive damages, and any other just and proper relief available under the Virginia CPA.

**COUNT IV**
**Consumers Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.***

66. Plaintiffs incorporate all of the above allegations by reference as if fully set forth herein, except those allegations seeking a damages award.

67. Plaintiffs assert this claim individually and on behalf of all Class members under Cal. Civ. Code §1781. Plaintiffs are sending Defendant a demand letter and will amend this Complaint in the event Defendant fails to cure its violations after proper demand.

68. The Consumers Legal Remedies Act ("CLRA") was enacted to protect consumers against unfair and deceptive business practices. The CLRA applies to Defendant's acts and practices because it covers transactions involving the sale of goods to consumers.

69. The Intel CPUs are "goods" under Cal. Civ. Code §1761(a).

70. Intel is a "person" under Cal. Civ. Code §1761(c).

71. Plaintiffs and the Class members are "consumers" under Cal. Civ. Code §1761(d).

72. Plaintiffs and Class members engaged in "transactions" under Cal. Civ. Code §1761(e), including the purchase of Intel CPUs and the presentation of Intel CPUs for repair or replacement of the Defect.

73. Intel's unfair and deceptive business practices were intended and did result in the sale of Intel CPUs, a defective consumer product.

74. Defendant's Intel CPUs failed to perform in accordance with their expected characteristics, uses and benefits.

75. Defendant had exclusive knowledge of material facts, *i.e*. the Intel CPUs were defective, unknown to Plaintiffs and Class members. If Plaintiffs and Class members had known of the Defect in the Intel CPU, they would not have purchased the CPUs at the prices they did, if at all.

76. Defendant had a duty to disclose the Defect for various reasons, including:

(a) Intel had exclusive knowledge of the Defect and other material facts not known to Plaintiffs or the Class; and

(b) Intel actively concealed a material fact from Plaintiffs and the Class.

77. Defendant engaged in unfair and deceptive practices by misrepresenting or not disclosing the above material facts from Plaintiffs and the Class, in violation of Cal. Civ. Code §1770(a)(5), (7), (14) and (16).

78. As a direct and proximate result of Defendant's conduct, Plaintiffs and the Class members suffered injury. Plaintiffs and Class members are entitled to injunctive relief, court costs and attorney fees, and other relief the Court deems proper.

**COUNT V**
**California Unfair Competition Law**

79. Plaintiffs incorporate all of the above allegations by reference as if fully set forth herein. Plaintiffs assert this claim individually and on behalf of all Class members.

80. Defendant's business acts and practices complained of were centered in, carried out, effectuated and perfected within or had their effect in the State of California, and injured Plaintiffs and all Class members.

81. Beginning as early as 2008, and continuing thereafter at least up through and including the date of filing this Complaint, Defendant committed acts of unfair competition, as

defined by §17200et seq., of the California Bus. & Prof. Code, by engaging in the acts and practices specified above.

82. This claim is brought pursuant to §§17203 and 17204 of the Cal. Bus. & Prof. Code to obtain equitable monetary and injunctive relief from Defendant for acts and practices as alleged herein that violated §17200 of the Cal. Bus. & Prof. Code, commonly known as the Unfair Competition Law.

83. Defendant's conduct as alleged herein violated §17200 of the Cal. Bus. & Prof. Code. The acts, omissions, practices and non-disclosures of Defendant constituted a common continuous course of conduct of unfair competition by means of the commission of unfair and unlawful business acts or practices within the meaning of Cal. Bus. & Prof. Code, §17200*et seq.*

84. Defendant engaged in "unlawful" business acts and practices by:

(a) breaching implied warranties; and

(b) violating the Consumers Legal Remedies Act, Cal. Civ. Code §1750 *et seq.*

85. Defendant engaged in "unfair" business acts and practices by, among other things:

(a) engaging in conduct where the utility of such conduct, if any, is outweighed by the gravity of the consequences to Plaintiffs and the Class considering the reasonably available alternatives, based on legislatively declared policies not to sell defective products in the market without providing an adequate remedy therefor;

(b) engaging in conduct that is immoral, unethical, oppressive, unscrupulous, or substantially injurious to Plaintiffs and the Class; and

(c) engaging in unfair business practices by refusing to repair or recall the defective Intel CPUs or providing compensation therefor.

86. Specifically, Defendant engaged in "unfair" business acts and practices by selling the Intel CPUs knowing or being aware the CPUs contained a critical security Defect, where the OS-level software patch would degrade the processors performance. Defendant also engaged in unfair business acts and practices by making implied warranties, which it refuses to honor.

87. As such conduct is or may be continuing and on-going, Plaintiffs and each of the Class members are entitled to injunctive relief to prohibit or correct such on-going acts of unfair competition, in addition to obtaining equitable monetary relief.

88. Plaintiffs and Class members used Defendant's products and had business dealings with Defendant either directly or indirectly as described above. The acts and practices of Defendant have caused Plaintiffs and Class members to lose money and property by being overcharged for and paying for the defective CPUs at issue, or being required to purchase an additional working CPU. Such loss was the result of the above acts of unfair competition and Defendant's misconduct in violation of the state laws set forth above. Plaintiffs are therefore entitled to seek recovery of such amounts. Such injury occurred at the time such monies were paid. Plaintiffs have thus each suffered injury in fact and lost money or property as a result of such acts and practices as set forth in detail above.

89. Defendant has unjustly benefited as a result of its wrongful conduct and its acts of unfair competition. Plaintiffs and Class members are accordingly entitled to equitable relief including restitution and/or restitutionary disgorgement of all revenues, earnings, profits, compensation, and benefits that may have been obtained by Defendant as a result of such business acts and practices, pursuant to California Bus. & Prof. Code §§17203 and 17204, as well as attorneys' fees and costs pursuant to, among others, Cal. Code of Civ. Proc. §1021.5.

**COUNT VI**
**Assumpsit, Restitution, Unjust Enrichment and/or Quasi-Contract**

90. Plaintiffs incorporate all of the above allegations by reference as if fully set forth herein. Plaintiffs assert this claim individually and on behalf of all Class members.

91. This cause of action is alleged as an alternative to the warranty claims as permitted under Rule 8(d)(2) of the Federal Rules of Civil Procedure.

92. As Plaintiffs and the Class show just grounds for recovering money paid for benefits Defendant received from them, either directly or indirectly, and they have a right to restitution at law through an action derived from the common-law writ of assumpsit by implying

a contract at law based on principles of restitution and unjust enrichment, or though quasi-contract.

93. Defendant, having received such benefits, is required to make restitution. The circumstances here are such that, as between the two, it is unjust for Defendant to retain such benefit based on the conduct described above. Such money or property belongs in good conscience to the Plaintiffs and Class members and can be traced to funds or property in Defendant's possession. Plaintiffs and Class members have unjustly enriched Defendant through payments and the resulting profits enjoyed by Defendant as a direct result of such payments. Plaintiffs' detriment and Defendant's enrichment were related to and flowed from the conduct challenged in this Complaint.

94. By virtue of the purchase and sale of the CPUs in question, Defendant alternatively entered into a series of implied-at-law or quasi-contracts that resulted in money being had and received by Defendant, either directly or indirectly, at the expense of Plaintiffs and Class members under agreements in assumpsit. Plaintiffs and other Class members conferred a benefit upon Defendant by purchasing one of the defective CPUs. Defendant had knowledge of the general receipt of such benefits, which Defendant received, accepted and retained. Defendant owes Plaintiffs and Class members these sums that can be obtained either directly from Class members, Defendant or its authorized retailers.

95. Under principles of restitution, an entity that has been unjustly enriched at the expense of another by the retention of benefit wrongfully obtained is required to make restitution to the other. In addition, under common law principles recognized in claims of common counts, assumpsit, unjust enrichment, restitution, and quasi-contract, under the circumstances alleged herein it would be inequitable for Defendant to retain such benefits without paying restitution or restitutionary damages. Such principles require Defendant to return such benefits when the retention of such benefits would unjustly enrich Defendant.

96. They should not be permitted to retain the benefits conferred by Plaintiffs and Class members via payments for the defective CPUs. Other remedies and claims may not permit them to obtain such relief, leaving them without an adequate remedy at law.

97. Plaintiffs and Class members seek appropriate monetary relief for such claims. In addition, pursuant to Cal. Civ. Code § 2224, "[o]ne who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act, is, unless he or she has some other and better right thereto, an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it." Based on the facts and circumstances alleged above, in order to prevent unjust enrichment and to prevent Defendant from taking advantage of its own wrongdoing, Plaintiffs and the Class are further entitled to the establishment of a constructive trust, in a sum certain, of all monies charged and collected or retained by Defendant from which Plaintiffs and Class members may seek restitution.

**COUNT VII**
**Strict Liability**

98. Plaintiffs incorporate all of the above allegations by reference as if fully set forth herein. Plaintiffs assert this claim individually and on behalf of all Class members.

99. Plaintiffs and the Class were harmed by CPUs Defendant manufactured, which were contained in, but also separate and apart from, the computers they purchased.

100. Defendant's CPUs contained a manufacturing defect, or were defectively designed for the reasons set forth above.

101. Plaintiffs and Class members have been harmed, as they now own a computer with a CPU that due to such manufacturing or design defect is subject to invasion of a supposedly core protected part of the CPU and decreased performance, in an amount according to proof at trial.

**COUNT VIII**
**Negligence**

102. Plaintiffs incorporate all of the above allegations by reference as if fully set forth herein. Plaintiffs assert this claim individually and on behalf of all Class members.

103. Defendant was negligent in the manufacture and design of the CPUs containing the Defect, which CPUs were contained in, but also separate and apart from, the computers Plaintiffs and Class members purchased.

104. Defendant's negligence was a substantial factor and reasonably foreseeable in causing harm to Plaintiffs and Class members.

105. Plaintiffs and Class members have been harmed, as they now own a computer with a CPU that due to such manufacturing or design defect is subject to invasion of a supposedly core protected part of the CPU and decreased performance, in an amount according to proof at trial.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and all Class members pray for judgment against Defendant as follows:

A. Declaring this action to be a proper class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

B. Awarding Plaintiffs and Class members all proper measures of equitable monetary relief and damages (damages excluded at this time for violations of the CLRA), plus interest to which they are entitled;

C. Awarding equitable, injunctive, and declaratory relief as the Court may deem just and proper, including restitution and restitutionary disgorgement;

D. Awarding Plaintiffs' reasonable costs and attorney's fees; and

E. Granting such further and other relief this Court deems appropriate.

## VII. DEMAND FOR JURY TRIAL

Plaintiffs, individually and on behalf of all others similarly situated, demand a trial by jury on all issues so triable.

DATED: January 29, 2018

Respectfully Submitted,

/s/ *Alison Chase*

Alison Chase (226976)
KELLER ROHRBACK L.L.P.
801 Garden Street, Suite 301
Santa Barbara, CA 93101
Telephone: (805) 456-1496
Facsimile: (805) 456-1497
Email: achase@kellerrohrback.com

T. David Copley
Gretchen Freeman Cappio, *pro hac vice forthcoming*
Cari Campen Laufenberg, *pro hac vice forthcoming*
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Telephone: (206) 623-1900
Facsimile: (206) 623-3384
Email: dcopley@kellerrohrback.com
Email: gcappio@kellerrohrback.com
Email: claufenberg@kellerrohrback.com

Jodi Westbrook Flowers, *pro hac vice forthcoming*
Fred Baker, *pro hac vice forthcoming*
Laura Ray, *pro hac vice forthcoming*
Andrew Arnold, *pro hac vice forthcoming*
MOTLEY RICE LLC
28 Bridgeside Boulevard
Mount Pleasant, SC 29464
Telephone: (843) 216-9000
Facsimile: (843) 216-9450
Email: jflowers@motleyrice.com
Email: fbaker@motleyrice.com
Email: lray@motleyrice.com
Email: aarnold@motleyrice.com

*Attorneys for Plaintiffs and the proposed class*

4851-1242-1979, v. 3